**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **AF HOLDCO, LLC d/b/a ADVANCE FINANCIAL,** | ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) ) **Case No. _____** |
| **ALOFT, LLC,** | ) ) |
| **Defendant.** | ) |

## COMPLAINT

Plaintiff AF Holdco, LLC d/b/a Advance Financial ("Advance Financial"), files this Complaint against the defendant, Aloft, LLC ("Aloft"), and alleges as follows:

## INTRODUCTION

1. Beginning on November 17, 2025, and through communications thereafter, Aloft, a non-practicing entity, has asserted that Advance Financial's website, https://www.af247.com/, infringes U.S. Patent No. 10,372,793 (the "Asserted Patent," **Exhibit 1**). As a result of this alleged patent infringement, Aloft has demanded that Advance Financial pay for a worthless license for the Asserted Patent.

2. As explained in greater detail below, Advance Financial does not infringe and has not infringed any valid or enforceable claim of the Asserted Patent, which is merely a process for drop-down menus for websites that is hardly new or novel to Aloft.

3. Further, the Asserted Patent is invalid for failure to satisfy one or more of the conditions for patentability set forth in 35 U.S.C. § 101 *et seq.,* including 35 U.S.C. §§ 101, 102, 103, 112, 120, and/or 132.

1

4.      The Asserted Patent is also unenforceable pursuant to the doctrines of inequitable conduct and prosecution laches as a result of conduct during prosecution.

5.      Advance Financial brings this action seeking: (i) a declaration under the Declaratory Judgments Act (28 U.S.C. § 2201 *et seq.*) that Advance Financial has not infringed, and does not infringe, any valid or enforceable claim of the Asserted Patent; (ii) a declaration under the Declaratory Judgments Act that the Asserted Patent is invalid and/or unenforceable; and (iii) an award of costs, expenses, disbursements, and reasonable attorneys' fees.

## THE PARTIES, JURISDICTION, AND VENUE

6.      Advance Financial is a Delaware limited liability company with its principal place of business at 100 Oceanside Drive, Nashville, Tennessee 37204.

7.      On information and belief, Aloft is a Texas limited liability company with an address at 211 West Tyler Street, Suite C-1, Longview, Texas 75601. Its registered agent is Mohammed Zafar Iqbal, 140 South East Green Oaks Boulevard, Arlington, Texas 76002.

8.      This Court has original and exclusive subject matter jurisdiction over Advance Financial's claims pursuant to 28 U.S.C. §§ 1331 and 1338 (a) and (b) because the claims arise under Acts of Congress, including the Patent Act, *i.e.*, 35 U.S.C. § 101 *et seq.*

9.      This Court also has original and exclusive subject matter jurisdiction over these claims because this Complaint arises under the Declaratory Judgments Act (28 U.S.C. §§ 2201 and 2202), in that it involves an actual case or controversy due to Aloft's accusation that Advance Financial infringes the Asserted Patent and its licensing demands made to Advance Financial.

10.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Advance Financial is headquartered in this District and because a substantial part of the events giving rise to this action occurred in this District.

11. Personal jurisdiction exists over Aloft in this District because Aloft has purposefully directed its patent enforcement efforts into this District. Aloft, by and through its licensing agent George Street Partners ("GSP") and GSP's David Norvell, sent a notice of patent infringement and follow-up licensing communications to Advance Financial, a limited liability company with its principal place of business in this District. Aloft purposefully availed itself of the forum state by targeting Advance Financial with unfounded infringement accusations and licensing demands. For these reasons, the Court's exercise of personal jurisdiction over Aloft comports with due process and is both proper and fair.

**FACTUAL BACKGROUND**

**A.      Relevant Parties**

12. Advance Financial is a Nashville-based fintech company serving customers across Tennessee and online in twenty additional states. It offers fast and flexible line of credit loans, online loans, and installment loans.

13. Advance Financial operates https://www.af247.com/, including all the web pages comprising the site (collectively, the "Accused Advance Financial Website"). Advance Financial uses the Accused Advance Financial Website to engage with customers and potential customers.

14. On information and belief, Aloft is a non-practicing entity, colloquially referred to as a "patent troll" or "patent assertion entity."

15. On further information and belief, Aloft contracts with GSP to serve as the exclusive licensor of Aloft's patent portfolio.

**B.      Aloft's Notice Letter and Communications Thereafter**

16. On November 17, 2025, Aloft sent Advance Financial a notice letter signed by its "Manager" Andrew Gordon (the "Notice Letter," **Exhibit 2**). In the Notice Letter, Aloft: (i) claims to be the owner of the Asserted Patent; (ii) accuses Advance Financial of infringement of the

3

Asserted Patent, specifically Claim 23; (iii) identifies Advance Financial's website as the allegedly infringing instrumentality; (iv) provides a brief outline of alleged conduct attributable to Advance Financial and alleges that conduct to be infringing; and (v) provides a claim chart asserting Aloft's theory of alleged infringement.

17. To resolve this alleged infringement, the Notice Letter informs Advance Financial that Aloft is "offering licenses" to Advance Financial and other allegedly similar companies whom Aloft maintains are engaging in patent infringement. *See* **Ex. 2** at p. 1.

18. While the price of the "license" is not stated in the Notice Letter, the Notice Letter goes on to state that GSP, Aloft's "authorized licensing agent," would have its agent, David Norvell, contact Advance Financial within the coming days to address the matter, including the "license." *See id.* at p. 2.

19. Since sending the Notice Letter on November 17, 2025, GSP's Norvell has repeatedly contacted Advance Financial on Aloft's behalf, attempting to induce Advance Financial to pay a significant sum of money in exchange for a patent license agreement. This includes contact by Norvell on: December 1, 2025 (email); January 12, 2026 (separate emails); January 27, 2026 (email); January 28, 2026 (phone call with voicemail); February 3, 2026 (phone call); February 12, 2026 (email); February 17, 2026 (email); February 18, 2026 (phone call and email); February 23, 2026 (email); February 26, 2026 (email); March 2, 2026 (phone call); March 3. 2026 (email); March 12, 2026 (phone call); and March 16, 2026 (email).

20. Advance Financial anticipates that Norvell will continue contacting Advance Financial on Aloft's behalf until Advance Financial either caves and pays the license fee/signs a patent license agreement or there is legal action taken.

**C.     Aloft's (and its Affiliates') Repeated Patent Troll Conduct**

21.     On information and belief, Aloft does not practice the Asserted Patent. Instead, Aloft's business is predominantly directed to monetizing its patents, including the Asserted Patent, via licensing. In other words, Aloft's business model is to assert dubious patent infringement claims against actual businesses, trying to squeeze money out of them in hopes they would rather fork over a payment than spend time engaging in expensive patent litigation.

22.     Aloft has an established and well-documented history of filing patent infringement lawsuits following communications very similar to the Notice Letter sent to Advance Financial (**Ex. 2**).

23.     Aloft is not alone in its patent troll conduct. On information and belief, Aloft is part of a network of affiliated entities under common control/ownership that repeatedly assert patent infringement claims in coordinated campaigns to intimidate businesses and extract payments based on questionable patents.

24.     On information and belief, this network is comprised of (1) Aloft; (2) Stragent, LLC; (3) Azure Networks, LLC; (4) Stragent Technologies, LLC; (5) Jenam Tech, LLC; and (6) Boadin Technology, LLC.

**D.     The Asserted Patent**

25.     The Asserted Patent is titled "Hyperlink with Graphical Cue" (**Ex. 1**). It is a method patent for use of drop-down menus on a website. In reality, it is nothing more than a computer-implementation of the organizational structure of a filing cabinet in which opening each drawer (top menu) allows a person to access documents organized by categories within the drawer (drop-down menu).

26. The Asserted Patent issued from U.S. Application No. 16/243,044, which was filed on January 8, 2019. *Id.* at p. 1.

27. The Asserted Patent is purportedly a continuation of U.S. Application No. 16/056,487 (filed August 6, 2018), which in turn is purportedly a continuation of U.S. Application No. 14/224,002 (filed March 24, 2014, now issued under U.S. Patent No. 10,042,823), which is purportedly a continuation of U.S. Application No. 12/334,068 (filed December 12, 2008, now issued under U.S. Patent No. 8,682,961), which is purportedly a continuation of U.S. Application No. 11/384,957 (filed March 20, 2006, now issued under U.S. Patent No. 7,529,795). *Id.*

28. The Asserted Patent comprises 30 claims, of which 4 are independent claims and the remaining 26 claims are dependent claims. *Id.*

29. According to the Asserted Patent, "[t]he present invention relates to computer-implemented techniques for improving the usefulness of hyperlinks in web pages." *Id.* at Sec. 1, Lines 24–26.

30. Claim 23 of the Asserted Patent (which Aloft asserted in its Notice Letter to Advance Financial) reads as follows:

"**23.** A method, comprising:

Providing content for at least one web page, the at least one web page including a set of one or more representations of one or more menu items and a set of one or more representations of one or more hyperlinks, and the at least one web page configured to:

Cause display of the set of one or more representations of one or more menu items of the at least one web page, without any images being used in the display of the set of one or more representations of one or more menu items, and with the set of one or more representations of one or more hyperlinks being initially hidden and taking the form of hypertext including one or more textual representations of one or more hyperlinks,

Allow receipt of a first input, in the form of hovering, that indicates a selection of one of the set of one or more representations of one or more menu items,

6

Cause, in response to receipt of the first input indicating the selection of the one of the set of one or more representations of one or more menu items, display of the set of one or more representations of one or more hyperlinks,

Allow receipt of a second input that indicates a selection of one of the set of one or more representations of one or more hyperlinks, and

Cause, in response to receipt of the second input indicating the selection of the one of the set of one or more representations of one or more hyperlinks, display of a destination corresponding to the one of the set of one or more representations of one or more hyperlinks, the destination including at least a portion of additional content displayed simultaneously with the set of one or more representations of one or more menu items, so as to allow use of the set of one or more representations of one or more menu items while the at least portion of additional content is simultaneously displayed with the set of one or more representations of one or more menu items."

*Id.* at Sec. 23, Lines 16–53.

**E. The Accused Advance Financial Website**

31.     The Accused Advance Financial Website comprises a collection of individual server-rendered pages that each re-display the site's main menu as part of a shared layout template.

32.     To facilitate navigation, the Accused Advance Financial Website uses a nested menu, wherein a user can first select one of the top-level menu options in the ribbon (*e.g.*, "About") and then, within that category, make a further selection (*e.g.*, "Advance Financial News"), causing navigation to the requested web page (*e.g.*, https://www. https://www.af247.com/about/news/).

33.     In response to the further selection, the user is directed to an entirely new page. The new page is not loaded or displayed prior to navigation away from the original menu. Likewise, the original menu is not persistently displayed, but instead reloaded as part of the new page's HTML.

7

34. The public source code confirms that the Accused Advance Financial Website's navigation menu and header are included in the server-rendered HTML for each page and are reloaded in full with every page navigation. There is no use of persistent client-side rendering, SPA routing, or AJAX-based mechanisms to load or assemble page-level content.

35. Throughout the entirety of the user experience on the Accused Advance Financial Website, the user is only routed amongst various internal web pages that comprise the Accused Advance Financial Website. All subsequent web pages the user is enabled to reach from the home page of the Accused Advance Financial Website through the nested menu are internal web pages which are part of the Accused Advance Financial Website.

**<u>COUNT I</u>**
**DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 10,372,793**
**(U.S.C. § 2201)**

36. Advance Financial repeats and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

37. Pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201 *et seq.*, Advance Financial requests a declaration by the Court that Advance Financial has not infringed and does not infringe any valid and enforceable claim of the Asserted Patent, whether literally or under the doctrine of equivalents, and that Advance Financial is not liable for any induced, contributory, divided, or other indirect infringement of any valid and enforceable claim of the Asserted Patent.

38. The Accused Advance Financial Website does not infringe Claim 23 of the Asserted Patent either literally or under the doctrine of equivalents because, among other reasons, it does not "[c]ause, in response to receipt of the second input indicating the selection of the one of the set of one or more representations of one or more hyperlinks, display of a destination corresponding to the one of the set of one or more representations of one or more hyperlinks, the destination

8

including at least a portion of additional content displayed simultaneously with the set of one or more representations of one or more menu items, so as to allow use of the set of one or more representations of one or more menu items while the at least portion of additional content is simultaneously displayed with the set of one or more representations of one or more menu items."
**Ex. 1** at Sec. 23, Lines 41–53.

39. Specifically, the Accused Advance Financial Website does not infringe Claim 23 of the Asserted Patent because it does not display a "destination" as that claim term is defined by the specification of the Asserted Patent. The specification of the Asserted Patent describes a "destination" as an external website. The specification does not provide any disclosure or support for a "destination" being an internal web page of the described website. The Accused Advance Financial Website only causes users to be directed to internal web pages of the Accused Advance Financial Website through its nested drop-down menus.

40. Further, the Accused Advance Financial Website does not infringe Claim 23 of the Asserted Patent because it does not cause "at least a portion of additional content" to be "displayed simultaneously with the set of one or more representations of one or more menu items." *Id.* at Sec. 23, Lines 46–53. As informed by the specification of the Asserted Patent, this claim limitation requires new content to be displayed without navigating away from the first web page, such as a display of destination content in a frame of the web page. For example, the specification describes the prior art use of textual representations of hyperlinks as follows:

> "Textual representations of hyperlinks, however, have certain drawbacks. For example, the textual representation of a hyperlink may not make the destination (anchor) of the hyperlink clear to the user ... To identify the destination of the web page, the user may be required to navigate to that web page (by selecting the hyperlinked text) and view it, or to perform a cumbersome operation such as cutting and pasting the URL of the hyperlink into a document. In either case, it is tedious and time-consuming

9

for the user to identify the destination of the hyperlink and therefore to decide whether to navigate to that destination."

*Id.* at Sec. 1, Lines 40–55.

41. The solution proposed by the Asserted Patent is to identify the "destination" corresponding to the hyperlinks by displaying "at least a portion of additional content ... so as to allow use of the set of one or more representations of one or more menu items while the at least portion of additional content is simultaneously displayed with the set of one or more representations of one or more menu items." *Id.* at Sec. 23, Lines 46–53. In other words, while remaining on the initial web page, a user can hover over or click on one of the hyperlinks in the drop-down menu which causes a visual preview of the hyperlink's destination to be displayed on the initial web page.

42. The annotated version of Figure 5A of the Asserted Patent below illustrates this concept. Outlined in **red** is web page 500, comprising a first frame 502a (outlined in **blue**) and a second frame 502b (outlined in **green**):



10

*Id.* at Figure 5A (emphasis added). The first frame 502a shows the top-level menu having a first set of hyperlink representations 504a/506a–h. A user can select (clicks or hovers over) one of the first set of hyperlink representations 504a/506a–h to access a drop-down menu having a second set of hyperlink representations 508a-l. When the user selects (clicks or hovers over) one of the drop-down menu hyperlink representations 508a-l, the web browser automatically displays the destination of the selected hyperlink in the second frame 502b, which allows the user to view the website destination before navigating away from the initial web page.

43. The Advance Financial Website does not use "frames" to allow users to see a visual representation of the destination of a hyperlink before navigating away from the initial web page. Rather, the Advance Financial Website utilizes the prior art textual representations of hyperlinks acknowledged by the Asserted Patent which do not display additional content when a user interacts with the menus.

44. For example, as shown in the below screenshot from the Accused Advance Financial Website, selecting a hyperlink from one of the drop-down menus does not allow the user to see a preview of the destination web page:



45. To identify the destination of the hyperlinks, a user of the Accused Advance Financial Website must click on the hyperlink and navigate away from the initial web page to a new web page within the website. The new page is not loaded or displayed prior to navigation away from the original menu. The Accused Advance Financial Website does not use persistent client-side rendering, SPA routing, or AJAX-based mechanisms to load or assemble page-level content.

46. Accordingly, the Accused Advance Financial Website does not infringe Claim 23 of the Asserted Patent.

47. Additionally, on information and belief, because of the proceedings in the U.S. Patent & Trademark Office (the "USPTO") during the prosecution of the applications which resulted in the Asserted Patent, as shown by the respective prosecution histories thereof, Aloft is estopped to claim a construction of any term of the Asserted Patent that would cause any valid claim thereof to cover or include the Accused Advance Financial Website, either literally or under the doctrine of equivalents, at least because the Accused Advance Financial Website is merely practicing the prior art textual representations of hyperlinks acknowledged by the Asserted Patent.

48. In light of Aloft's Notice Letter (**Ex. 2**) and continuing licensing communications thereafter, there exists a substantial, real, and immediate controversy between Advance Financial and Aloft concerning Advance Financial's alleged infringement of the Asserted Patent.

49. Aloft's conduct toward Advance Financial, including its Notice Letter and persistent follow up communications, combined with Aloft's aggressive widespread licensing campaign and history of filing baseless patent infringement lawsuits, demonstrates Aloft's intent to litigate the issue of patent infringement.

50. This controversy warrants the issuance of a declaratory judgment of non-infringement of the Asserted Patent. A judicial declaration is necessary and appropriate so that Advance Financial may ascertain its rights and obligations regarding the Asserted Patent.

51. Advance Financial therefore respectfully seeks a judicial declaration that it does not directly, indirectly, or otherwise infringe any valid and enforceable claim of the Asserted Patent, and therefore that Advance Financial is not liable for any induced, contributory, divided, or other indirect infringement of any valid and enforceable claim of the Asserted Patent.

**COUNT II**
**DECLARATION OF INVALIDITY OF U.S. PATENT NO. 10,372,793**
**(U.S.C. § 2201; 35 U.S.C. §§ 101, 102, 103, 112, 132)**

52. Advance Financial repeats and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

53. Pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201 *et seq.*, Advance Financial requests a declaration by the Court that the Asserted Patent is invalid for failure to satisfy one or more of the conditions for patentability set forth in 35 U.S.C. § 101 *et seq.*, including 35 §§ 101, 102, 103, 112, and/or 132.

54. The claims of the Asserted Patent are invalid under 35 U.S.C. § 101 because they are directed to an abstract idea and fail to recite an inventive concept sufficient to transform the claimed abstract idea into patent-eligible subject matter.

55. Additionally, the claims of the Asserted Patent are invalid because they are anticipated pursuant to 35 U.S.C. § 102 or rendered obvious pursuant to 35 U.S.C. § 103 by prior art patents, printed publications, and/or public use or on-sale activities, alone or in combination, when considered in view of the knowledge of a person of ordinary skill in the art, including but not limited to (1) Votipka, U.S. Patent No. 6,405,238; (2) Benson, U.S. Patent No. 7,913,185; (3)

13

Good, U.S. Patent Application No. 2007/0094267; (4) Milener, U.S. Patent Application No. 2006/0070012; and (5) Sundaresan, U.S. Patent Application No. 2002/0129114.

56. In this regard, on information and belief, the claimed invention of the Asserted Patent was "in public use or on sale in this country, more than one year prior to the date of the application," by virtue of, *inter alia*, www.instantbull.com (hereinafter the "Instantbull Website"). Accordingly, the claimed invention is anticipated, and the Asserted Patent is therefore invalid, under the public use or on sale bar as prescribed in 35 U.S.C. § 102(b).

57. The Asserted Patent claims priority to U.S. Application No. 11/384,957 (the "'957 Application"). The '957 Application was filed by Instantbull, LLC on March 20, 2006, together with U.S. Provisional Patent Application 60/784,140 (the "'140 Provisional Application"). *See* '957 Application, **Exhibit 3**; '140 Provisional Application, **Exhibit 4**.

58. The '957 Application was titled "Message Board Aggregator" and did not include any disclosure supporting the "Hyperlink with Graphical Cue" claimed in the Asserted Patent. *See* **Ex. 3**. Rather, the claimed "Hyperlink with Graphical Cue" was disclosed in the '140 Provisional Application. *See* **Ex. 4**.

59. Importantly, the '957 Application did not incorporate Figures 5A and 5B that were included in the '140 Provisional Application, and those figures form the basis of the claimed infringement of the Asserted Patent. *See generally* **Ex. 3**. The '957 Application tries to remedy this by claiming priority to and incorporating the '140 Provisional Application via a section titled "Cross Reference to Related Applications" which reads: "This application is related to a commonly-owned and concurrently-filed U.S. Provisional Patent Application entitled, 'Instantaneous Symbol Lookup,' and a commonly-owned and concurrently-filed U.S. Provisional

14

Patent Application entitled 'Hyperlink with Graphical Cue,' both of which are hereby incorporated by reference. *See id.* at p. 4.

60. However, the '957 Application does not properly claim priority to the '140 Provisional Application as required. An applicant is not entitled to the benefit of a provisional application unless the applicant has complied with the requirements of 35 U.S.C. § 119(e) and 37 C.F.R. § 1.78. Mere reference to the provisional application in the specification is not a sufficient claim for benefit under 35 U.S.C. 119(e). Under 37 C.F.R. § 1.78, a nonprovisional application that claims the benefit of one or more prior-filed provisional applications must contain, or be amended to contain, a reference to each such previously-filed provisional application, identifying it by the provisional application number (consisting of series code and serial number). This reference must be submitted during the pendency of the later filed application. Failure to timely submit the reference is considered a waiver of any benefit under 35 U.S.C. § 119 to such prior-filed provisional application.

61. The '957 Application was never amended to include the serial number or application number of any other patent application, including the '140 Provisional Application, and the '957 Application issued as U.S. Patent No. 7,529,795 without including a serial number or application number for the '140 Provisional Application. *See* U.S. Patent No. 7,529,795, **Exhibit 5**. As such, the '957 Application cannot claim priority to the '140 Provisional Application.

62. Additionally, the '140 Provisional Application could not be properly incorporated by reference into the '957 Application because the '140 Provisional Application is not a U.S. patent or U.S. patent application publication. As such, pursuant to 37 C.F.R. § 1.57(d), the '140 Provisional Application cannot be used to satisfy the disclosure requirements of a later-filed patent application via incorporation.

15

63. For these reasons, the '957 Application, and any subsequent continuation applications, cannot rely on the '140 Provisional Application for any claimed subject matter without such subject matter being considered new matter with a new filing date.

64. U.S. Application No. 12/334,068 (the "'068 Application"), titled "Hyperlink with Graphical Cue," was filed on December 12, 2008 as a continuation to the '957 Application. *See* '068 Application, **Exhibit 6**. The '068 Application included figures mirroring figures 5A and 5B of the '140 Provisional Application, but that were absent in the '957 Application.

65. Beyond the "Related Applications" paragraph of the written description, the entirety of the as-filed disclosure of the '068 Application is identical to the '140 Provisional Application.

66. None of the paragraphs of the written specification or the drawings of the '068 Application as filed are present in the '957 Application. As such, all matter filed in the '068 Application is new matter with a new filing date of December 12, 2008. Accordingly, Aloft is at best entitled to a priority date of December 12, 2008.

67. However, in July 2006, Instantbull, LLC launched a website which featured, among other elements, top-level menu items with hidden drop-down submenus containing hyperlinks. When a user clicked on one of these hyperlinks, content from the linked destination website would be displayed within an embedded frame on the Instantbull home page, allowing the user to browse content on external websites without navigating away from the Instantbull interface. This functionality is directly pertinent to claimed "Hyperlink with Graphical Cue."

68. As shown by the Instantbull Website, the claimed "Hyperlink with Graphical Cue" was in public use or on-sale more than two years before earliest priority date of the '068 Application (December 12, 2008). Therefore, the subject matter of the '068 Application was

16

anticipated by the Instantbull Website, rendering the '068 Application and all child applications claiming priority to the '068 Application, including the Asserted Patent, invalid under the public use or on sale bar set forth in 35 U.S.C. § 102(b).[1]

69.     The claims of the Asserted Patent are also invalid pursuant to 35 U.S.C. § 112 and/or 35 U.S.C. § 132 for failure to comply with the written description requirement and/or for indefiniteness, including as it relates to the prohibition against adding "new matter" to a continuation.

70.     The aforementioned controversy warrants the issuance of a declaratory judgment of invalidity. A judicial declaration is necessary and appropriate so that Advance Financial may ascertain its rights and obligations regarding the Asserted Patent.

71.     Advance Financial respectfully seeks a judicial declaration that the Asserted Patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112, and/or 132.

**COUNT III**
**DECLARATION OF UNENFORCEABILITY**
**OF U.S. PATENT NO. 10,372,793 DUE TO INEQUITABLE CONDUCT**

72.     Advance Financial repeats and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

A.     **Duty of Disclosure**

73.     Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the USPTO, which includes a duty to disclose to the USPTO all information known to that individual to be material to patentability. This duty extends from the time an application is filed until the issuance of the patent.

---

[1] Prior art and evidence of public use and sale to be relied on at trial will be identified as required by 35 U.S.C. § 282 and/or any order entered by the Court.

74. The Asserted Patent descends from a line of patent applications and patents filed by interrelated parties, all of whom failed to satisfy their duties of candor and good faith. The relevant patent applications, patents, filers, entities, and assignments are outlined in the table below and described in further detail below:

| Application /Patent | Filing/Issue Date | Filer/Entity | Assignment History |
|---|---|---|---|
| 11/384,957<br><br>7,529,795 | Mar. 20, 2006<br><br>May 5, 2009 | Robert Poltkin<br><br>(Instantbull, LLC) | Stragent Technologies, LLC (Nov. 11, 2008)<br><br>Stragent, LLC (Dec. 31, 2008)<br><br>Aloft (Aug. 21, 2009)<br><br>Boadin Technology, LLC (Nov. 12, 2011)<br><br>Stragent, LLC (Nov. 25, 2014)<br><br>Jenam Tech, LLC (Dec. 2, 2016) |
| 12/334,068 (Continuation of '957 Application)<br><br>8,682,961 | Dec. 12, 2008<br><br>Mar. 25, 2014 | Kevin J. Zilka<br><br>(Stragent Technologies, LLC) | Stragent, LLC (Dec. 31, 2008)<br><br>Aloft (Apr. 21, 2009)<br><br>Boadin Technology, LLC (Nov. 12, 2011)<br><br>Jenam Tech, LLC (Nov. 25, 2014)<br><br>Stragent, LLC (Nov. 25, 2014)<br><br>Aloft (Dec. 2, 2016) |
| 12/334,093<br><br>8,683,003 | Dec.12, 2008<br><br>Mar. 25, 2014 | Kevin J. Zilka<br><br>(Stragent Technologies, LLC) | Stragent, LLC (Dec. 31, 2008)<br><br>Aloft (Apr. 21, 2009)<br><br>Boadin Technology, LLC (Nov. 12, 2011)<br><br>Jenam Tech, LLC (Nov. 25, 2014)<br><br>Stragent, LLC (Nov. 25, 2014)<br><br>Aloft (Dec. 2, 2016) |

18

| | | | |
|---|---|---|---|
| 14/224,002 (Continuation of '068 Application)<br><br>10,042,823 | Mar. 24, 2014<br><br>Aug. 7, 2018 | Patrick E. Caldwell<br><br>(Boadin Technology, LLC) | Stragent Technologies, LLC (Nov. 11, 2008)<br><br>Stragent, LLC (Dec. 31, 2008)<br><br>Aloft (Apr. 21, 2009)<br><br>Boadin Technology, LLC (Nov. 12, 2011)<br><br>Stragent, LLC (Nov. 25, 2014)<br><br>Jenam Tech, LLC (Nov. 25, 2014)<br><br>Aloft (Dec. 2, 2016) |
| 15,721,939 (Continuation of '002 Application)<br><br>10,078,623 | Oct. 1, 2017<br><br>Sept. 18, 2018 | Patrick E. Caldwell<br><br>(Aloft) | |
| 16,056,487 (Continuation of '002 Application)<br><br>10,691,874 | Aug. 6, 2018<br><br>Jun. 23, 2020 | Patrick E. Caldwell<br><br>(Aloft) | |
| 16,243,044 (Continuation of '487 Application)<br><br>10,372,793 | Jan. 8, 2019<br><br>Aug. 6, 2019 | Patrick E. Caldwell<br><br>(Aloft) | |

75.     As shown in the chart above, the Asserted Patent stems from the '957 Application (**Ex. 3**). The '044 Application which led to the Asserted Patent was filed as a continuation of the '487 Application. The '487 Application was filed as a continuation of the '002 Application. The '002 Application was filed as a continuation of the '068 Application. The '068 Application was filed as a continuation of the '957 Application. References known at the time of the '068 Application (and other applications thereafter, including the '044 Application) were not disclosed to the examiners.

76.     The parties involved in the chain of applications leading to the Asserted Patent are interrelated and had knowledge of the relevant references that were not disclosed to the USPTO.

19

77.     For example, Andrew Gordon held himself out as the "Manager" of Aloft in the Notice Letter to Advance Financial. *See* **Ex. 2**. Upon information and belief, Gordon is also: (1) Executive Vice President of Stragent, LLC; (2) Managing member of Boadin Technology, LLC; (3) Managing member of Jenam Tech, LLC; and (4) Listed on assignments between Stragent Technologies, LLC, Stragent, LLC, Aloft, Boadin Technology, LLC, and Jenam Tech, LLC.

78.     As another example, upon information and belief, Aloft shares (1) the same address as Stragent, LLC and Jenam Tech, LLC; (2) the same attorney as Stragent, LLC, Stragent Technologies, LLC, and Boadin Technology, LLC; and (3) the same management as Stragent Technologies, LLC, Stragent, LLC, Boadin Technology, LLC, and Jenam Tech, LLC.

79.     Aloft, through its attorneys, management, and interrelated companies, was involved with every patent application and patent leading up to the '044 Application and Asserted Patent. In its involvement, Aloft deceived the USPTO by failing to cite material references of which it was aware.

80.     Due to this inequitable conduct, the Asserted Patent is unenforceable.

### i.     *Failure to Disclose Material Information ('068 Application)*

81.     On December 12, 2008, Attorney Kevin J. Zilka filed two patent applications on behalf of Stragent Technologies, LLC as continuations of the '957 Application: the '068 Application (**Ex. 6**) and U.S. Application No. 12/334,093 (the "'093 Application," **Exhibit 7**).

82.     The abstract, specifications, and drawings of the '068 Application and the '093 Application were identical at the time of filing. Both were copies of the '140 Provisional Application. The subject matter of the claims submitted in each of the applications was substantially similar.

20

83. The '068 Application and the '093 Application were assigned by Stragent Technologies, LLC to Stragent, LLC on December 31, 2008.

84. On February 9, 2009, Attorney Zilka, as President of Stragent, LLC, transferred power of attorney for these matters from himself to Attorney Christopher M. Edgeworth.

85. The '068 Application and the '093 Application were then assigned from Stragent, LLC to Aloft on April 21, 2009.

86. On January 29, 2010, Attorney Edgeworth, then president of Aloft, transferred power of attorney in these matters to Attorney Patrick E. Caldwell.

87. Thereafter, on November 12, 2011, the '068 Application and the '093 Application were assigned from Aloft to Boadin Technology, LLC.

88. On September 17, 2012, a Rejection was issued to Attorney Caldwell and Gordon, rejecting the claim under 35 U.S.C. § 103 as being unpatentable over Benson, U.S. 7,913,185 in view of Kavner, U.S. 6,366,947. *See* Sept. 17, 2012 Rejection, **Exhibit 8**.

89. On January 17, 2013, Attorney Caldwell filed a responsive communication on behalf of Applicant Boadin Technology, LLC. In doing do, Attorney Caldwell acknowledged these two references, indicating he and Gordon had actual knowledge of these relevant and material references. *See* Jan. 17, 2013 Responsive Communication, **Exhibit 9**.

90. On September 17, 2012, the Examiner further cited Solotko, U.S. Publication No. 2008/0103889 as relevant to the prosecution of the '093 Application.

91. On January 17, 2013, Attorney Caldwell on behalf of Applicant Boadin Technology, LLC submitted an Information Disclosure Statement, disclosing Shuster *et al.*, U.S. Publication No. 2010/0287368, and Armstrong *et al.*, U.S. Publication No. 2012/0066340, to the Examiner. *See* Jan. 17, 2013 Information Disclosure Statement, **Exhibit 10**.

21

92. On April 29, 2013, the Examiner cited Thakur, U.S. Patent No. 7,895,644, Soroca U.S. Publication No. 2010/0094878, and Weber, U.S. Publication No. 2008/0052372, as relevant to the prosecution of the '093 Application.

93. The co-pending '068 Application issued as U.S. Patent No. 8,682,961 on March 25, 2014. *See* U.S. Patent No. 8,682,961, **Exhibit 11**.

94. At no time during the prosecution of the '068 Application were any of the above-listed references disclosed to the Examiner or considered by the Examiner: (1) Benson, U.S. 7,913,185; (2) Kavner, U.S. 6,366,947; (3) Solotko, U.S. Publication No. 2008/0103889; (4) Thakur, U.S. Patent No. 7,895,644; (5) Soroca, U.S. Publication No. 2010/0094878; (6) Weber, U.S. Publication No. 2008/0052372; (7) Shuster *et al.*, U.S. Publication No. 2010/0287368; and (8) Armstrong *et al.*, U.S. Publication No. 2012/0066340.

95. Likewise, none of these references are listed on the face of U.S. Patent No. 8,682,961. *See id.*

96. The references not cited in the prosecution of the '068 Application were material to a reasonable examiner in deciding whether to allow the '068 Application. Among other reasons, these references were cited by the Examiner in the prosecution of the '093 Application as pertinent to patentability under 35 U.S.C. § 103 or were previously cited by the Applicant during examination of the '093 Application, which has similar specification, subject matter, and claims to the '068 Application.

97. Boadin Technology, LLC; Attorney Caldwell; and Gordon had knowledge of the withheld references during the prosecution of the '068 Application.

98.     The failure to cite references of which the above were aware, and knew were material, suggests intent to deceive the USPTO, especially in light of the fact that Attorney Caldwell and Gordon are each registered patent attorneys.

### ii.     Failure to Disclose Material Information ('002 Application)

99.     On March 24, 2014, Attorney Caldwell filed the '002 Application on behalf of Applicant Boadin Technology, LLC as a continuation of the '068 Application, with similar specification, drawings, and claims to the '068 Application and the '093 Application. *See* '002 Application, **Exhibit 12**.

100.    On November 25, 2014, the '002 Application was assigned from Boadin Technology, LLC to Stragent, LLC, and then from Stragent, LLC to Jenam Tech, LLC. Both assignments are signed by Gordon as managing member of Boadin Technology, LLC and as EVP of Stragent, LLC.

101.    The '002 Application was then assigned from Jenam Tech, LLC to Aloft on December 02, 2016.

102.    On information and belief, at all times during the prosecution of the '002 Application, Gordon was the managing member of all Applicants.

103.    The Applicants (including its successors in interest), Attorney Caldwell, and Gordon did not, at any time during the prosecution of the '002 Application, disclose any of the following references to the Examiner, nor were these references considered by the Examiner in any parent application to the '002 Application: (1) Benson, U.S. 7,913,185; (2) Kavner, U.S. 6,366,947; (3) Solotko, U.S. Publication No. 2008/0103889; (4) Thakur, U.S. Patent No. 7,895,644; (5) Soroca, U.S. Publication No. 2010/0094878; (6) Weber, U.S. Publication No.

2008/0052372; (7) Shuster *et al.*, U.S. Publication No. 2010/0287368; and (8) Armstrong *et al.*, U.S. Publication No. 2012/0066340.

104. Of these eight references, only one (Benson U.S. 7,913,185), was listed on the face of U.S. Patent No. 10,042,823, which issued from the '002 Application. *See* U.S. Patent No. 10,042,823, **Exhibit 13**.

105. Benson was independently located by and cited by the Examiner during prosecution of the '002 Application and was the subject of the rejection of the claims under 35 U.S.C. §§ 102 and 103. *See* Rejections of Claims Discussing Benson, **Exhibit 14**. The other seven references were not considered by the Examiner for the '002 Application.

106. These seven references not cited were material to a reasonable examiner in deciding whether to allow the '002 Application. Among other reasons, these references were cited by the Examiner in the prosecution of the '093 Application as pertinent to patentability under 35 U.S.C. § 103 or were previously cited by the Applicant during examination of the '093 Application, which has similar specification, subject matter, and claims to the '002 Application.

107. Boadin Technology, LLC (including its successors in interest); Attorney Caldwell; and Gordon had knowledge of the withheld references during the prosecution of the '002 Application.

108. The failure to cite material known references suggests intent to deceive the USPTO, especially in light of the fact that Attorney Caldwell and Gordon are each registered patent attorneys.

### iii. *Failure to Disclose Material Information ('487 Application)*

109. On October 1, 2017, Attorney Caldwell filed U.S. Application No. 15/721,939 (the "'939 Application") on behalf of Aloft as a continuation of the '002 Application. *See* '939

24

Application, **Exhibit 15**. The '939 Application was co-pending with U.S. Application No. 16/056,487 (the "'487 Application"), which was filed on August 6, 2018 by Attorney Caldwell on behalf of Aloft as a continuation of the '002 Application. *See* '487 Application, **Exhibit 16**.

110. The '939 Application and the '487 Application had identical disclosures to the '002 Application, and cover subject matter substantially similar to the '093 Application.

111. On December 15, 2017, a Non-Final Rejection was issued to Attorney Caldwell regarding the '939 Application, rejecting the claims under 35 U.S.C. § 103 as being unpatentable over NPL – Microsoft, Lisa Wollin-Creating a JavaScript Drop-Down Menu in FrontPage in view of Buchmiller *et. al.*, U.S. Publication No. 2003/0187706. *See* Dec. 15, 2017 Non-Final Rejection, **Exhibit 17**.

112. On December 18, 2017, Attorney Caldwell filed a responsive communication on behalf of Aloft specifically acknowledging these references in writing, indicating Attorney Caldwell and Andrew Gordon had actual knowledge of these relevant and material references. *See* Dec. 18, 2017 Responsive Communication, **Exhibit 18**.

113. On December 15, 2017 and March 28, 2018, the Examiner further cited Huynh, U.S. Publication No. 2002/0198909 and Cohen, U.S. Publication No. 2003/0184582 as relevant to the prosecution of the '939 Application. *See* Dec. 15, 2017 and March 28, 2018 Examiner Citations, **Exhibit 19**.

114. The co-pending '487 Application issued as U.S. Patent No. 10,691,874 on June 23, 2020. *See* U.S. Patent No. 10,691,874, **Exhibit 20**.

115. Aloft, Attorney Caldwell, and Gordon did not, at any time during the prosecution of the '487 Application, disclose any of the following references to the Examiner, nor were these references considered by the Examiner in any parent application to the '487 Application: (1)

25

Kavner, U.S. 6,366,947; (2) Solotko, U.S. Publication No. 2008/0103889; (3) Thakur, U.S. Patent No. 7,895,644; (4) Soroca, U.S. Publication No. 2010/0094878; (5) Weber, U.S. Publication No. 2008/0052372; (6) Shuster *et al.*, U.S. Publication No. 2010/0287368; (7) Armstrong *et al.*, U.S. Publication No. 2012/0066340; (8) Buchmiller *et. al.*, U.S. Publication No. 2003/0187706; (9) Huynh, U.S. Publication No. 2002/0198909; and (10) Cohen, U.S. Publication No. 2003/0184582.

116. None of the foregoing references are listed on the face of U.S. Patent No. 10,691,874, which issued from the '487 Application. *See id.*

117. Again, the references not cited in the prosecution of the '487 Application were material to a reasonable examiner in deciding whether to allow the '487 Application. Among other reasons, these references were cited by the Examiners in the prosecution of the '093 Application and the '939 Application as pertinent to patentability under 35 U.S.C. § 103 or were previously cited by the Applicant during examination of the '093 Application, each of which has identical or similar specification, subject matter, and claims to the '487 Application.

118. Aloft, Attorney Caldwell, and Gordon had knowledge of the withheld references during the prosecution of the '487 Application.

119. The failure to cite material known references suggests intent to deceive the USPTO, especially in light of the fact that Attorney Caldwell and Gordon are each registered patent attorneys.

### iv. *Failure to Disclose Material Information ('044 Application)*

120. On January 8, 2019, Attorney Caldwell filed U.S. Application No. 16/243,044 (the "'044 Application" or the "Asserted Patent Application") on behalf of Aloft as a continuation of the '487 Application, with an identical written description to the '487 Application and the '939

26

Application. The '044 Application covered a substantially similar subject matter as the '093 Application. *See* '044 Application, **Exhibit 21**.

121. Aloft, Attorney Caldwell, and Gordon did not, at any time during the prosecution of the '044 Application, disclose any of the following references to the Examiner, nor were these references considered by the Examiner in any parent application to the '044 Application: (1) Kavner, U.S. 6,366,947; (2) Solotko, U.S. Publication No. 2008/0103889; (3) Thakur, U.S. Patent No. 7,895,644; (4) Soroca, U.S. Publication No. 2010/0094878; (5) Weber, U.S. Publication No. 2008/0052372; (6) Shuster *et al.*, U.S. Publication No. 2010/0287368; (7) Armstrong *et al.*, U.S. Publication No. 2012/0066340; (8) Buchmiller *et. al.*, U.S. Publication No. 2003/0187706; (9) Huynh, U.S. Publication No. 2002/0198909; and (10) Cohen, U.S. Publication No. 2003/0184582.

122. None of these references are listed on the face of U.S. Patent No. 10,372,793 (the Asserted Patent), which issued from the '044 Application. *See* Asserted Patent, **Ex. 1**.

123. Again, these references not cited in the prosecution of the '044 Application were material to a reasonable examiner in deciding whether to allow the '044 Application. Among other reasons, they were cited by the Examiners in the prosecution of the '093 Application and the '939 Application as pertinent to patentability under 35 U.S.C. § 103 or were previously cited by Applicant during examination of the '093 Application, each of which have identical or similar specification, subject matter, and claims to the '044 Application.

124. Aloft, Attorney Caldwell, and Gordon had knowledge of the withheld references during the prosecution of the '044 Application.

125. The failure to cite material known references suggests intent to deceive the USPTO, especially in light of the fact that Attorney Caldwell and Gordon are each registered patent attorneys.

126. Aloft, Attorney Caldwell, and Andrew Gordon committed inequitable conduct by failing to disclose the known material references to the USPTO during the prosecution of the '044 Application. The Asserted Patent would not have been issued had such references been disclosed. Consequently, the Asserted Patent is unenforceable.

127. The aforementioned controversy warrants the issuance of a declaratory judgment of unenforceability due to inequitable conduct. A judicial declaration is necessary and appropriate so that Advance Financial may ascertain its rights and obligations regarding the Asserted Patent.

128. Advance Financial respectfully seeks a judicial declaration that the Asserted Patent is unenforceable.

B. **Materially False Statements to the USPTO**

129. Patent applicants, inventors, and their attorneys all owe a duty of candor to the USPTO which extends to ensuring that no "new matter" is entered in a patent application other than a continuation-in-part (CIP) application, at the time the CIP is filed. This duty extends throughout the prosecution of a patent application.

130. Throughout the course of the prosecution leading to the grant of the Asserted Patent, several affirmative representations were made to the USPTO by Aloft, its predecessors in interest, and the prosecuting attorneys that the introduction of amended specifications and new drawings added "no new matter" to the first filed '957 Application (**Ex. 3**).

131. On December 12, 2008, '068 Application was filed by Attorney Zilka on behalf of Applicant Stragent Technologies, LLC as a "Continuation" application, not a "Continuation-in-part" application, of the first filed '957 Application under 35 U.S.C. § 120. *See* **Ex. 6**.

132. By making this filing, the Applicant and Attorney Zilka certified to the USPTO that the disclosure of the '068 Application contained no new matter and that the disclosure of the '068

Application was the same as that of the first filed '957 Application. Despite this, the entirety of the '068 Application is unsupported by the '957 Application and constitutes new matter. As such, Attorney Zilka and the Applicant violation their duty of candor by making this submission.

133. On April 13, 2009, the Applicant filed replacement drawings for the '068 Application. In this filing, Attorney Christopher M. Edgeworth stated that no new matter was added by the replacement drawing sheets. *See* Apr. 13, 2009 Replacement Drawing Filing, **Exhibit 22**. This again is a false certification that the '068 Application is fully supported by the '957 Application, and constitutes a violation of Attorney Edgeworth and the Applicant's duty of candor.

134. The USPTO issued a Final Rejection of the '068 Application on June 10, 2011, rejecting all claims. *See* June 10, 2011 Final Rejection, **Exhibit 23**. This Final Rejection illustrates that the Examiner relied on the Applicant and its attorneys' (false) representations to the USPTO that the application was a continuation of the '957 Application with a priority date of March 20, 2006. However, the history detailed at length above indicates that the date searched by the Examiner should have been no earlier than December 12, 2008, the filing date of the '068 Application. *See* **Ex. 6**.

135. On October 11, 2011, a replacement/substitute written specification and replacement drawing sheets for the '068 Application were filed by Attorney Caldwell on behalf of the Applicant. *See* Oct. 11, 2011 Replacement Written Specification and Replacement Drawing, **Exhibit 24**.

136. Notably, this amendment adds the first reference to the '140 Provisional Application, stating as follows: "The present application is a continuation of U.S. Application Ser. No. 11/384,957 filed Mar. 20, 2006, now issued under U.S. Patent No.: 7,529,795, which is incorporated herein by reference and which, in turn, incorporates by reference U.S. Provisional

Application Ser. No. 60/784,141 filed Mar. 20, 2006 and U.S. Provisional Application Ser. No. 60/784,140 filed Mar. 20, 2006, both of which are incorporated herein by reference." *Id.* at p. 6.

137. As described herein, the '957 Application cannot and does not incorporate the '140 Provisional Application by reference. Additionally, the '140 Provisional Application cannot be incorporated by reference into the '068 Application.

138. The October 11, 2011 amendment also added at least 70 new paragraphs of text and six new drawing figures to the '068 Application. *See e.g.*, *id.* at pp. 26–33 (containing drawings). This was done despite a sworn statement signed by Attorney Caldwell on behalf of the Applicant which stated that the "accompanying substitute specification contains no new matter over that contained in the above-identified application originally filed." *Id.* at p. 1.

139. The USPTO relied on the sworn statement in examining the '068 Application, taking the sworn statement as proof that the substitute specification included no new matter. This statement was, however, objectively false.

140. On August 8, 2013, the USPTO issued a Notice of Allowance and supplied the Examiner's search strategy and results. *See* Aug. 8, 2013 Notice of Allowance with Search Strategy and Results, **Exhibit 25**. Relying on the false statements made by the Applicants and prosecuting attorneys, the USPTO used the March 20, 2006 filing date of the first filed '957 Application as the date for the prior art search.

141. Before the '068 Application issued as U.S. Patent No. 8,682,961, Attorney Caldwell filed the '002 Application" on behalf of Boadin Technology, LLC on March 24, 2014, as a "continuation" application tracing priority to the '068 Application. *See* **Ex. 12**.

142. In preparing and filing the '002 Application, Attorney Caldwell and the Applicant merely re-filed the substitute disclosure of the '068 Application. As discussed above, the '068

Application lacked support from the first filed '957 Application, thus the '002 Application also lacks support from the first filed '957 Application. Regardless, Attorney Caldwell and the Applicant claimed priority to the '957 Application.

143. Again, the USPTO relied on the claimed priority date of March 20, 2006 as the basis for its prior art searches.

144. On November 13, 2017, Attorney Caldwell and the Applicant filed a "Substitute Statement in Lieu of an Oath or Declaration." *See* Nov. 13, 2017 Substitute Statement, **Exhibit 26**. This Substitute Statement was filed in the name of Aloft as "assignee" and signed by Gordon, Aloft's "Manager."

145. The Substitute Statement indicated that the "[i]nventor cannot be found or reached after diligent effort." *Id.* at p. 1. Despite this representation, nothing in the file wrapper indicates what steps were taken to locate or contact the inventor during the course of the prosecution of the '002 Application. To the best of Advance Financial's knowledge, neither the Applicants, nor Gordon, nor Attorney Caldwell have ever explained to the USPTO or to the public why the inventor could not be located over the span of years.

146. On August 6, 2018, during the pendency of the '002 Application, Attorney Caldwell filed the '487 Application on behalf of Aloft as a continuation of the '002 Application. *See* **Ex. 16**.

147. In preparing and filing the '487 Application, Attorney Caldwell and Aloft again re-filed the substituted disclosure of the '068 Application. As discussed above, the '068 Application completely lacked support from the first filed '957 Application, thus the '487 Application also completely lacked support from the '957 Application. Despite this, Attorney Caldwell and Aloft claimed priority to the '957 Application, with the Examiner relying on the claimed priority date of March 20, 2006 as the basis for its prior art searches.

148. On January 8, 2019, during the pendency of the '487 Application, Attorney Caldwell filed the '044 Application on behalf of Aloft as a continuation of the '487 Application, claiming priority to the '957 Application. *See* **Ex. 21**.

149. In preparing and filing the '044 Application, Attorney Caldwell and Aloft again re-filed the substituted disclosure of the '068 Application. As discussed above, the '068 Application completely lacked support from the first filed '957 Application, thus, the '044 Application also completely lacked support from the '957 Application. Despite this, Attorney Caldwell and Aloft yet again claimed priority to the '957 Application, with the Examiner relying on the claimed priority date of March 20, 2006 as the basis for its prior art searches.

150. In addition to the above material misrepresentations, in the '068 Application, the '002 Application, the '487 Application, and the '044 Application, the Applicants and prosecuting attorneys make representations to the USPTO that the Applicant is the owner of the invention represented in the Applications. This is materially false. The '140 Provisional Application on which each of these Applications is directly based was never assigned from Instantbull, LLC to any Applicant. The '957 Application which was assigned to the Applicants contains no disclosure which supports the invention claimed by the Applicants in the '068 Application, the '002 Application, the '487 Application, or the '044 Application.

151. Based on the above, unmistakably and materially false representations were made by the Applicants (which include Aloft and its predecessors in interest) and their prosecuting attorneys with the specific intent of deceiving the USPTO, which would not have issued the Asserted Patent absent the web misrepresentations family during the course of prosecuting the family of patents leading to the Asserted Patent.

32

152.    The prosecuting attorneys and Applicants were motivated by their own financial gain to secure the patent claims and to exclude others from practicing the claimed invention.

153.    These affirmative misrepresentations not only benefited Aloft, but also negatively impacted the entities which "license" Aloft's patents for a significant fee.

154.    The aforementioned controversy warrants the issuance of a declaratory judgment of unenforceability due to inequitable conduct. A judicial declaration is necessary and appropriate so that Advance Financial may ascertain its rights and obligations regarding the Asserted Patent.

155.    In view of the foregoing, Advance Financial respectfully seeks a judicial declaration that the Asserted Patent is unenforceable for failure to comply with the duty of candor and good faith in dealing with the USPTO.

## COUNT IV
## DECLARATION OF UNENFORCEABILITY
## OF U.S. PATENT NO. 10,372,793 DUE TO PROSECUTION LACHES

156.    Advance Financial repeats and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

157.    As described herein, there was an unreasonable and unexplained delay in prosecuting the Asserted Patent.

158.    Further, the overwhelming amount of prior art cited to the Examiner (as opposed to the much more relevant prior art not disclosed by Applicants) demonstrates an intent to overwhelm and inundate the USPTO.

159.    Advance Financial and countless others have been prejudiced by this unreasonable and unexplained delay.

160.    The aforementioned controversy warrants the issuance of a declaratory judgment of unenforceability of the Asserted Patent due to prosecution laches. A judicial declaration is

33

necessary and appropriate so that Advance Financial may ascertain its rights and obligations regarding the Asserted Patent.

161. Advance Financial respectfully seeks a judicial declaration that the Asserted Patent is unenforceable due to prosecution laches.

## **PRAYER FOR RELIEF**

Advance Financial respectfully requests the following relief:

A. A declaration that Advance Financial has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of U.S. Patent No. 10,372,793, whether literally or under the doctrine of equivalents;

B. A declaration that each claim of U.S. Patent No. 10,372,793 is invalid as a matter of law;

C. A declaration that U.S. Patent No. 10,372,793 is unenforceable against Advance Financial under the doctrine of inequitable conduct and/or prosecution laches;

D. An order declaring that this is an exceptional case and awarding Advance Financial its costs, expenses, disbursements, and reasonable attorneys' fees under 35 U.S.C. § 285 and 28 U.S.C. § 1927; *and*

E. Any such other and further relief which the Court deems just and proper under the circumstances.

Dated: March 30, 2026

Respectfully submitted,

*/s/ Rachel L. Sodée*
R. Brandon Bundren (BPR No. 30985)
Rachel L. Sodée (BPR No. 38391)
BRADLEY ARANT BOULT CUMMINGS LLP
1221 Broadway, Suite 2400
Nashville, TN 37203
P: (615) 252-3872
bbundren@bradley.com
rsodee@bradley.com

*Attorneys for Plaintiff AF Holdco, LLC d/b/a Advance Financial*

34